IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

UNITED STATES OF AMERICA                    3:24-cr-015

VS.                                         June 3, 2025
                                            Galveston, Texas
                                            10:15 a.m.
SAMUEL DAVID SANFORD, III


REVOCATION HEARING

BEFORE THE HONORABLE JEFFREY V. BROWN

UNITED STATES DISTRICT COURT

APPEARANCES:

For the United States            Kenneth A. Cusick, AUSA
                                 United States Attorney's
                                    Office
                                 1000 Louisiana Street
                                 Suite 2400
                                 Houston, Texas 77002

For the Defendant                Amr Ahmed, AFPD
                                 Federal Public Defender's
                                    Office
                                 440 Louisiana Street
                                 Suite 1350
                                 Houston, Texas 77002

Case Manager                     George Cardenas

Electronic Recording Operator    Andy Gould

Also Present                     United States Probation
                                    Office


Proceedings from official electronic sound recording;
transcript produced by court approved transcriber.

DIGITAL SCROLL TRANSCRIPTION                     281.382.9862

THE COURT:  The first case on the Court's docket this morning is in 3:24-cr-15, United States versus Samuel David Sanford, III.

Would the attorneys make their appearances, please?

MR. CUSICK:  Kenneth Cusick for the United States; good morning, Your Honor.

MR. AHMED:  Amr Ahmed for Mr. Sanford; good morning.

THE COURT:  Okay.  Great.

And the Defendant is here, too, and so is Probation.

This is a Peti- -- this is a hearing on a Petition for Revocation of Supervised Release.  The Petition lists eight violations.

The first is a public intoxication charge.  The second is a criminal trespass – trespass charge.  The third is a illegal possession of controlled substance charge.  The fourth is failure to report change of residence within 72 hours.  The fifth is a DWI charge.  The sixth is assault on a police officer.  The seventh is evading detention with vehicle or watercraft, and the eighth is possession of a firearm by a felon.

Mr. Ahmed, how does your client plead to those violations?  True or not true?

MR. AHMED:  As to Violation No. 4, he pleads true,

and I believe the Government may be moving to dismiss the remainder, the remaining violations.

THE COURT:  All right.

Is that correct, Mr. Cusick?

MR. CUSICK:  Yes, Your Honor.

THE COURT:  All right.

And a short factual basis for the – for that Violation No. 4.

MR. CUSICK:  Yes, Your Honor.

Mr. Sanford was being pro- -- supervised at the time by Ms. Cassandra Vera Saenz, with the United States Probation Department.  Part of the conditions were that he was to report to the office.

On the occasion July 3rd, 2024, he was directed to report to the office by 3:00 p.m., and he failed to do so. July 19th, the Probation Department attempted to conduct a home visit at his last known address, in Hitchcock, Texas, and he could not be located at the RV Park.  And they attempted to contact all emergency numbers with no success.  And until his arrest some months later his whereabouts were unknown, Your Honor.

THE COURT:  All right.

Based on the Defendant's plea of true to that fourth violation and on the factual basis offered by the Government, the Court finds that fourth violation to be true.

The Court has reviewed the Revocation worksheets and Chapter 7 policy statements.  The statutory maximum term of imprisonment in this case is two years.  According to the Chapter 7 computations, the imprisonment range for a criminal history category of 6 and a Grade C violation is 8 to 14 months.

I'm now going to hear from the Government and from the Defense on whether Revocation should be revoked.  Before I do that, let me note for the record that before the hearing Defense counsel provided the Court with some materials, which I was able to review before coming out here this morning.

One is a letter dated May 2nd from Mark Matlock (phonetic).  The second is a letter from the Defendant himself.  The third is a letter from his wife, Elizabeth Sanford.  And the fourth is from Katy Rugraff (phonetic).

There's also some bank account information – it looks like – I think and a copy of a lease agreement.

So, Mr. Cusick, the Government's position on the revocation of supervised release.

MR. CUSICK:  Your Honor, the Government's position is Mr. Sanford's supervised release should be revoked.  The Government is recommending an eight-month term of imprisonment followed by no additional supervision.

THE COURT:  All right.

Mr. Ahmed, the Defense's position?

MR. AHMED:  Your Honor, Mr. Sanford is willing to comply with supervision if the Court is willing to reinstate him.  I think that would be the best case scenario.  His ultimate goal was to go home today to help and take care of his new born.  If the Court is unwilling to reinstate him, we're asking for a minimum sentence, the low Guideline sentence.

The mitigating circumstances are somewhat captured in that – in the letters.  He has a lot of family support and friends who have known him for a long time.  If the Court has reviewed his Pre-sentence Report, he also has a significant amount of prior sentences, including drug issues and mental health issues.

If Probation wrote to the Court in some notes and comments that I think the Court should weigh heavily, which includes how he started off supervision.  After coming out of his most significant prison sentence for this underlying bank robbery offense, he did extremely well on supervision.  He was employed.  He was complying with all of his treatment, including his mental health treatment.  And then, he lost his job, and he had – his wife explained to me also had a family member who committed suicide, and her spouse overdosed after that suicide.  So, he had some difficult mental health family situations, and he stopped reporting.

6

And he's pled true to that today.

The other violations are contested.  I think I need to just briefly mention them, because the Court has reviewed them and at sentencing had we gone forward on the other violations – the Montgomery – he was arrested on March 22nd in Montgomery County, and the allegations are contested.  The firearm – his wife would testify, and she gave me an affidavit; I didn't submit it to the Court – but briefly, it was her gun, and the evidence would be that it was left by her in the car, but otherwise, inaccessible to him.

As far as the DUI, I did not see the blood result.  I didn't review the offense report for that.  As far as the excessive force, it sounds like there was a struggle in his bedroom.  I saw his mugshot.  He was pretty beat up from that incident, and his wife would have some testimony regarding that.

So, those – those new charges are contested.  I'm just mentioning these things.  Sometimes the Court – I want to make sure the Court is sentencing him for what he's pled true to, which is not reporting.

His wife is very supportive.  She unexpectantly gave birth last week by C-section.  So, he posted a bond May 19th.  He was incarcerated in Montgomery County for a little under two months, and he paid about $10,000 and posted bond on May 19th, with the hopes that – he understands the

system and the process well.  He understands – he was hoping to get a bond from Your Honor while the state charges are pending and he can contest those.  He really wants to go home to help his wife.  It's her first child.  He has three other grown children.  But his goal is to get home and try to help his wife raise children.

He also has a prospect – great talented.  Mr. Sanford is very talented.  He has a nutrition experience, welding experience.  He had a CDL.  I don't think he'll be able to work with that now because of the DUI.

But he also has a prospect for employment from home.  There's an agency, a debt collection agency, which he has – it sounds like solid opportunity to work from home.

If the Court's not willing to reinstate him and is going to sentence him, we would ask the Court to consider a low sentence and also consider home confinement, so that he can be released and deal with his Montgomery County charges, which he paid the bond for, while being available to help with his newborn child.

THE COURT:  Okay.  All right.

Would Mr. Sanford like to address the Court?

DEFENDANT SANFORD:  Yes, sir.

Good morning, Your Honor.

The charges that are stacked against me really don't reflect my character.  I mean, if you would look at

those charges, it would look like I was out there driving around drunk with a pistol and fighting with the cops and that couldn't have been further from the truth.

My – I really had a life-changing event, and I'm – I'm sure – because I think you are a father, and my daughter coming into my life has just been a really life-changing event.  And when we found out Elizabeth was pregnant, I knew that I had got out of – you know – I wasn't in good standings with the Feds, and we talked about taking care of that, and we both agreed that as soon as the baby was here – because she had a high risk pregnancy, because she has gestational hypertension.  And she's 43 years old.  This is her first child to have.  And we both agreed that we would get the baby into the world, and then – that we would come and we would address it with the courts and get it back in good standings with the Feds, because there – in no way, shape and form would I ever try to drag my wife and my infant while I'm trying to run from the law or anything like that.

So, this is truly a life changing event for me.  And I would want nothing more to be able to get back out there to my wife and to my daughter and to be able to support them, not only financially but mentally and physically.

You know, she just had major surgery, had to have a C-section, and she has never took care of an infant before.  This is her first child, you know.  And I do have

three other childs (sic) that I took care of in infancy, so I'm seasoned with that.

And I'm willing to comply with whatever, you know, the Court mandates.  You know, if – if it's going to – some rehabilitation, whatever it is that could get me back to answer the call as husband and a father that's being screamed at me right now.  You know, I'm really needed at home.  I am willing to comply and do whatever it takes to do that.

And I understand the seriousness – the seriousness of my offenses, and my non-compliance, you know, and I'm not – I'm not saying that I didn't do that.  And I regret that.  I mean, in retrospect, in looking back, you know, I really, really – I regret that terribly, because I put not only myself in a bad position but my wife and our newly born child, so.

And I'm asking for leniency, and if there's any other way we could do it without physically being incarcerated from them, if it's home detention and wearing a monitor and complying with any classes or anything that you need from me, I'm more than willing.  And I will – I will go above and beyond what the Court asks to prove, you know, that – my commitment to staying in good standings with the law and supporting my family.  I mean, my – my family means – they mean everything to me.  They're the little family right there – her, my daughter and my dog.  You know, that's my –

that's my little family, and they mean the world to me.  And I'm – I'll do anything for them.  So, I'm –

I just – I just pray that the Court can find another way for me to be punished without having to be separated from my premature baby and my wife, as she's fresh out of major surgery.

And if it is seen that I have to go away, I would beg the Courts to allow me sometime to at least meet my daughter and maybe self-surrender and maybe just see that I have to go away and do some time, so I can – ask me to –

THE COURT:  Okay.  All right.

I would like to briefly visit with Probation before – before we go any further.

So, be right back.

(Recess taken at 10:27:22 a.m.)

(Proceedings resumed at 10:31:39 a.m.)

THE COURT:  All right, Mr. Sanford.  This is what I am going to do.

I'm not going to revoke supervised release.  You're going to stay on supervised release.  Your new date for the end of supervised release is November 22, 2026.  I am adding some conditions to your supervised release.

No alcohol consumption or possession, GPS monitoring – and I think you were supposed to do a mental health evaluation that you didn't show up for, and you need to

go get that done.

The GPS monitoring will allow you to go to work, I think go to church – there are some limited – and it will be in the judgment that the Court issues as to what =- what you can do and what you can't, and Probation is going to work with you on that.

You appeal to me as a father, and it's the new baby and your wife that are getting this for you.  But if you are going to appeal to my personal circumstances, you need to know that I'm a father and my father was a police officer. And I know that Mr. Ahmed is completely correct that what you are – what you pleaded true to was the failure to show up, but your – all of your encounters with law enforcement need to be on the up and up.

DEFENDANT SANFORD:  Yes, sir.

THE COURT:  And you need to not have any encounters with law enforcement.

And anything, any violation between now and the end of your supervised release is going to get you every second that I can send you away for, regardless of wife or baby or any other thing – anything else.

I mean, you – you told me you want to straighten up and fly right.  You need to do it at least until November 22nd, 2026.

All right?

DEFENDANT SANFORD:  Yes, sir.

THE COURT:  Is there anything else that we need to do in this one, Mr. Cusick?

MR. CUSICK:  No, Your Honor.

Just for the record, though, the Government, I guess, moves to dismiss the violation – all but No. 4, since we're not proceeding on them.

THE COURT:  All right.

Those seven violations are dismissed.  That motion is granted.

Mr. Ahmed, anything else we can – we can do?

MR. AHMED:  No, Your Honor.

Thank you.

THE COURT:  All right.

Then, the Court remands Mr. Sanford to the custody of the Marshal for the purpose of processing his release.

And, Mr. Sanford, let's never lay eyes on each other ever again.  How about that?

DEFENDANT SANFORD:  Yes, sir.

Thank you very much, Your Honor.

THE COURT:  Okay.

DEFENDANT SANFORD:  I appreciate you.  And you will never see me again, not in this light anyway.

THE COURT:  Okay.  All right.

DEFENDANT SANFORD:  Thank you so much, sir.

THE COURT:  Okay.

The Court stands in recess.

(Pause in proceedings.)

THE COURT:  Are we still on, Andy?

ELECTRONIC RECORDING OPERATOR:  Yes.

THE COURT:  Okay.

To get your ankle monitor for the GPS, you're going to have to go to Houston to get that done, I think.  So, you need to make those arrangements.

And also, Probation is me.

DEFENDANT SANFORD:  Yes, sir.

THE COURT:  So, what they tell you to do is what I'm telling you to do.

DEFENDANT SANFORD:  Yes, sir.

THE COURT:  And the respect that you would show to me you show to Probation.

DEFENDANT SANFORD:  Absolutely –

THE COURT:  Okay.

DEFENDANT SANFORD:  Absolutely, Your Honor.

THE COURT:  Okay.

All right.

DEFENDANT SANFORD:  Thank you very much, Your Honor.

THE COURT:  All right.

(Proceedings adjourned at 10:36 a.m.)

14

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

I, Linda Griffin, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording and/or by Video/Zoom of the proceedings in the above-entitled matter.

/s/ Linda Griffin                          November 12, 2025
Linda Griffin                                         Date

DIGITAL SCROLL TRANSCRIPTION                            281.382.9862